# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

HARTLAND LAKESIDE JOINT NO. 3
SCHOOL DISTRICT, on its own behalf
and on behalf of all others similarly
situated, et al.,

        Plaintiffs,

    v.                                  Case No. 12-C-154

WEA INSURANCE CORPORATION, et al.,

        Defendants.

---

## ORDER DENYING PLAINTIFFS' MOTION TO REMAND

---

### I.  BACKGROUND

The Hartland Lakeside Joint No. 3 School District, Oconomowoc Area School District, and Arrowhead Union High School District filed this action in state court on January 20, 2012, on their own behalf and on behalf of all others similarly situated (collectively "plaintiffs"), against the WEA Insurance Corporation ("WEA Insurance"), Wisconsin Education Association Insurance Trust ("WEA Trust"), Patricia Barrette, Lisa Glaser, Margaret Guertler, Amy Johnson, Suzanne Kahl, Carol Kettner, Heather Mielke, Shelly Moore, Mary Thiesen, and Dan Weidner (collectively "defendants"). The plaintiffs allege that the defendants unlawfully applied for, obtained, and withheld funds from the Early Retiree Reinsurance Program ("ERRP"), 42 U.S.C. § 18002, which rightfully belong to the plaintiffs. (Compl. ¶ 1, ECF No. 1-1.) By doing so, the plaintiffs argue that the defendants committed conversion and civil theft, were unjustly enriched, and breached their fiduciary duty to the plaintiffs, all in violation of Wisconsin law. (Compl. ¶¶ 54–74, ECF No. 1-1.)

On February 14, 2012, the defendants filed a notice of removal pursuant to 28 U.S.C. §§ 1441 and 1446, based on federal question jurisdiction conferred by 28 U.S.C. § 1331. The plaintiffs then filed a motion to remand on March 1, 2012, arguing that the court does not have original jurisdiction over the claims asserted in the plaintiffs' complaint. The motion has been fully briefed and is now ready for resolution by this court. For the reasons that follow, the court will deny the plaintiffs' motion to remand.

## II. DISCUSSION

The plaintiffs argue that all four counts allege state-law claims, and therefore no federal question exists. The defendants argue that removal was proper because the court has original jurisdiction of the federal questions presented by the plaintiffs' claims, pursuant to 28 U.S.C. §§ 1331 and 1441(a). Specifically, the defendants assert that the plaintiffs' claims "raise a disputed and substantial federal issue in that resolution of their claims depends on interpretation of federal law and regulations" and that the court "may entertain Plaintiffs' claims without disturbing the balance of federal and state judicial responsibilities."[1] (Notice of Removal 7–8, ECF No. 1.)

"Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "In the typical 'arising under' action such as a suit under 42 U.S.C. § 1983,

---

[1] The defendants also argue that the plaintiffs have engaged in "artful pleading" in an attempt to avoid federal jurisdiction. However, the court finds this assertion unsupported because the ERRP does not provide a federal cause of action that preempts the state-law claims asserted by the plaintiff. *See Finch v. Wis. Auto Title Loans, Inc.*, 586 F. Supp. 2d 1070, 1075 n.4 (E.D. Wis. 2008) ("[A]rtful pleading is only a concern when the plaintiff has no choice but to assert a federal claim (such as in the complete preemption arena), and drafts his or her complaint in an attempt to conceal the federal nature of the claim.").

2

federal law creates the cause of action asserted by the plaintiff." *McCormick v. Excel Corp.*, 413 F. Supp. 2d 967, 969 (E.D. Wis. 2006). A case also "arises under" federal law if "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 28 (1983). When a plaintiff asserts state-law claims that appear to have federal questions embedded in the claims, the court must determine whether the state-law claims "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods.*, *Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314. The burden of establishing federal jurisdiction is on the party seeking removal, and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiffs' choice of forum in state court. *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993).

In their complaint, the plaintiffs do not assert a federal cause of action. Instead, the plaintiffs assert four state-law claims. Indeed, there is no private right of action under the ERRP. However, this does not necessarily mean that removal is improper. Instead, the court must look to the plaintiffs' complaint and determine whether the state-law claims (1) raise a federal issue (2) that is substantial and disputed and (3) the court may hear the claims without disturbing the balance of federal and state judicial responsibilities. The court will therefore evaluate these three factors below.

## A. Necessary Federal Issue

In the complaint, the plaintiffs assert four claims against the defendants: (1) conversion; (2) civil theft; (3) unjust enrichment; and (4) breach of fiduciary duty. (Compl. ¶¶ 54–74, ECF No. 1-1.) Wisconsin statutory and common law define the elements of these four claims. In order to determine whether any of the claims "necessarily raise" any federal issues, the court will look to how Wisconsin

3

law defines each claim.

*1. Conversion*

To succeed on a conversion claim, the plaintiffs must show that the defendants (1) intentionally controlled or took property belonging to the plaintiffs; (2) the defendants controlled or took the property without the plaintiffs' consent; and (3) these acts resulted in serious interference with the plaintiffs' rights to possess the property. *Bruner v. Heritage Co.*, 593 N.W.2d 814, 818 (Wis. Ct. App. 1999). "[C]onversion does not include wrongful intent or knowledge that what is being taken rightfully belongs to another." *Id*. Thus, the assertion that the defendant acted in good faith will not shield the defendant from liability. *Regas v. Helios*, 186 N.W. 165, 166 (Wis. 1922).

In the complaint, the plaintiffs allege that the "WEA Trust Defendants have applied for and received, or otherwise intentionally control, ERRP reimbursements belonging to [the plaintiffs]." (Compl. ¶ 58, ECF No. 1-1.) The plaintiffs further state that the "WEA Trust Defendants' refusal to release the ERRP reimbursements to [the plaintiffs] has resulted in serious interference with the rights of [the plaintiffs] to possess and control such funds . . . ." (Compl. ¶ 60, ECF No. 1-1.)

In order to succeed on their conversion claim, the plaintiffs must first establish that the ERRP funds that the defendants received belonged to the plaintiffs. Additionally, the plaintiffs must demonstrate that the defendants' use of the ERRP reimbursements has resulted in serious interference with the plaintiffs' rights to the ERRP reimbursements. To evaluate this claim, the court must look to the ERRP and federal regulations defining and implementing the program to determine whether the plaintiffs or the defendants were entitled to the funds and whether the defendants' use of the funds, under federal law, seriously interfered with any rights the plaintiffs may have under federal law. *See* 45 C.F.R. §§ 149.1–149.700 (providing definitions and explanations of the ERRP). Thus, determination of the

4

federal issue is necessary to establishing the plaintiffs' conversion claim.

*2. Civil Theft*

To put it simply, a person commits a civil theft under Wis. Stat. §§ 895.446 and 943.20 if he takes property belonging to another without that person's consent. The allegations in the complaint again state that the defendants "have applied for and received, or otherwise intentionally control, ERRP reimbursements belonging to [the plaintiffs]" and that the defendants have done so "without the consent and with the intent to deprive [the plaintiffs] permanently of the possession of such funds." (Compl. ¶¶ 63–64, ECF No. 1-1.) Further, the plaintiffs state that the defendants' "refusal to release the ERRP reimbursements to [the plaintiffs] is contrary to Defendants' authority, and has resulted in injury to [the plaintiffs] in an amount to be determined at trial." (Compl. ¶ 65, ECF No. 1-1.)

Like conversion, the plaintiffs must first demonstrate that the ERRP funds belonged to the plaintiffs. This requires the court to interpret and apply the ERRP and applicable federal regulations. In addition to the rightful recipient of the program reimbursements, the plaintiffs also allege that the defendants' refusal to release funds to the plaintiffs was contrary to the authority vested in the defendants' by the ERRP and the implementing federal regulations. *See* 42 U.S.C. § 18002; 45 C.F.R. §§ 149.1–149.700. Such a determination clearly relies on federal law. Thus, determination of the federal issue is necessary to establish the plaintiffs' civil theft claim.

*3. Unjust Enrichment*

The elements of unjust enrichment are: (1) a benefit conferred upon the defendant by the plaintiff; (2) knowledge by the defendant of the benefit; and (3) acceptance or retention of the benefit by the defendant under circumstances making it inequitable for the defendant to retain the benefit without paying for its value. *Puttkammer v. Minth*, 266 N.W.2d 361, 363 (Wis. 1978).

5

The plaintiffs argue that the "ERRP reimbursements were intended to benefit [the plaintiffs] as the entities that sponsored and paid the cost of providing coverage to their eligible employees and retirees" and that "[a]s a result of its application for, receipt of, and refusal to turn over ERRP reimbursements, Defendants' have been unjustly enriched in an amount to be determined at trial." (Compl. ¶¶ 68–69, ECF No. 1-1.)

Based on the plaintiffs' phrasing of the claim, the main issue presented by such claim is whether the ERRP reimbursements belong to the plaintiffs or whether the defendants were entitled to the funds. If the plaintiffs were not entitled to the funds, then the claim fails. Thus, the court must determine, like the two previous claims, whether the defendants were the proper recipients of the ERRP reimbursements under 42 U.S.C. § 18002 and the relevant federal regulations. It is therefore necessary to resolve the federal issue in order to determine liability under the plaintiffs' unjust enrichment claim.

*4. Breach of Fiduciary Duty*

"The elements of a claim for breach of fiduciary duty are: (1) the defendant owed the plaintiff a fiduciary duty; (2) the defendant breached that duty; and (3) the breach of duty caused the plaintiff's damage." *Berner Cheese Corp v. Krug*, 2008 WI 95, ¶ 40, 312 Wis. 2d 251, 752 N.W.2d 800 (Wis. 2008). "The fiduciary relationship comes into being by the manifestation of consent by the fiduciary to act on behalf of another." *Zastrow v. Journal of Commc'ns, Inc.*, 2006 WI 72, ¶ 31, 291 Wis. 2d 426, 718 N.W.2d 51 (Wis. 2006).

In the complaint, the plaintiffs state that "in applying for reimbursements on behalf of [the plaintiffs], the WEA Trust Defendants acted as agents for the [plaintiffs]. As agents of [the plaintiffs], the WEA Trust Defendants owe the [plaintiffs] a fiduciary duty. The WEA Trust Defendants breached their fiduciary duties to the [plaintiffs] by, among other things, refusing to release ERRP reimbursements,

6

or otherwise relinquish control of such funds, to the [plaintiffs]." (Compl. ¶¶ 71–73, ECF No. 1-1.)

In determining whether the defendants' act of applying for ERRP reimbursements created an agency relationship, the court must look to the ERRP and federal regulations. It will be necessary to evaluate the definitions of who is or is not entitled to ERRP reimbursements and what relationship those entities have to the employers of the early retirees. Although state law controls the test to be applied, the substance of the analysis rests on federal law. Thus, the federal issue will be necessary to evaluate the claim.

**B. Substantial and Disputed Federal Issue**

In their complaint, the plaintiffs summarize the action as follows:

> 1.     This is a class action that seeks to recover funds and/or damages for the WEA Trust Defendants' wrongful conduct in applying for, obtaining, and improperly withholding from Hartland Lakeside, Oconomowoc, Arrowhead and other similarly situated Wisconsin school districts, federal government health benefit reimbursements. These federal government reimbursements, part of the Early Retiree Reinsurance Program ("ERRP"), were made available to employers, like the Schools, to offset a portion of their costs in providing and paying for health benefit coverage for their early retirees. The reimbursements were intended to encourage employers, like the Schools, to continue to provide early retiree health benefit coverage until the broader federal health care reform law was implemented. The reimbursements were *not* intended as subsidies for insurance carriers, like the WEA Trust Defendants.

> 2.     WEA Trust Defendants applied for and received reimbursements on behalf of Hartland Lakeside, Oconomowoc, Arrowhead, and other Wisconsin school districts for health benefit claims relating to the school districts' early retirees. The WEA Trust Defendants then wrongfully withheld these reimbursements to coerce the schools into renewing their health insurance coverage with the WEA Trust Defendants. When Harland Lakeside and other schools refused to give in to the coercion and changed insurance carriers, the WEA Trust Defendants wrongfully withheld, and, in violation of the schools' rights, continue to refuse to turn over, the funds to the schools or to otherwise give the districts credit for the funds the WEA Trust Defendants obtained on the school districts' behalf.

(Compl. ¶¶ 1–2, ECF No. 1-1) (emphasis original) (internal citations omitted).

7

The summary focuses exclusively on the main issue: alleged misappropriation of ERRP funds by WEA Trust. To determine whether the plaintiffs were entitled to the funds, a court must look to the federal regulations governing the ERRP. If the plaintiffs were not entitled to the funds, then the case ends. If they were entitled to the funds, then a court must determine whether the defendants could lawfully receive the funds and if so, whether their decision not to disperse the funds to the plaintiffs was permissible under federal law. The answers to these questions are largely determinative of the plaintiffs' claims.

The dispute centers around whether, according to the federal regulations relevant to the ERRP, the defendants were permitted to apply for, receive, and control ERRP funds. Specifically, the parties dispute who can be a "plan sponsor" under the ERRP, whether the ERRP funds may be lawfully dispersed to an insurance carrier, and whether the defendants must turn over the ERRP reimbursements to the plaintiffs. These issues demonstrate that there is a "particular disputed issue of federal law." *Bennett v. Southwest Airlines Co.*, 484 F.3d 907, 909 (7th Cir. 2007) (emphasis omitted).

The plaintiffs rely on *Bennett* to support their argument that federal question jurisdiction does not exist. In *Bennett*, the plaintiffs were aircraft passengers and bystanders who were injured or killed when an airplane overshot the runway, crashed into a barrier and a fence, and crushed a car in its path. *Id.* at 908. The plaintiffs brought a negligence claim in Illinois state court and the defendants removed the case to federal court asserting federal question jurisdiction "because federal aviation standards play[ed] a major role in a claim that [the defendants] acted negligently." *Id.* The court noted that the suit did not revolve around "any *particular* disputed issue of federal law." *Id.* at 909 (emphasis original). Instead, the claims "depend[ed] on a fact-bound question such as whether the pilots should have executed a missed approach or, having elected to land, exercised adequate diligence in activating the thrust reversers

8

. . . ." *Id*. Because the case was confined to factual questions, not the meaning of the federal statutes and regulations implicated, the court found that federal question jurisdiction was unavailable and remanded the case to state court. *Id*. at 909–12.

In *Bennett*, the court found that "[t]he meaning of federal statutes and regulations may play little or no role." *Id* at 909. However, in the instant case, the meaning of federal statutes and regulations play an important role. The litigation centers around who may apply for, receive, and control ERRP funds. Although the elements of the claims asserted by the plaintiffs are governed by state law, the threshold issues that will determine liability require the interpretation of federal statutes and regulations.

Additionally, the federal government has a strong interest in implementing its federal program, which disperses federal funds. In fact, 42 U.S.C. § 18002(c)(6) provides that the Secretary shall establish–

> (A) an appeals process to permit participating employment-based plans to appeal a determination of the Secretary with respect to claims submitted under this section; and

> (B) procedures to protect against fraud, waste, and abuse under the program.

In addition to the statute, federal regulations, specifically 45 C.F.R. §§ 149.1–149.700, discuss implementation of the program as well as consequences of non-compliance, fraud, or similar fault. *See* 45 C.F.R. § 149.41. The statute and the federal regulations do not vest authority in the states to implement or oversee the program. Instead, regulatory authority rests completely with the federal government and its implementing agencies.

The discussion above demonstrates that the state-law claims alleged by the plaintiffs raise substantial and disputed federal issues that must be resolved by application of federal law. I therefore find that substantial and disputed federal issues exist.

9

**C. Balance of Federal and State Judicial Responsibilities**

Additionally, the court must determine if finding jurisdiction in this action because it involves the ERRP will significantly upset the "congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. The lack of a private right of action in the ERRP weighs against finding federal question jurisdiction. *Id*. at 318. However, the lack of a private right of action is not determinative of whether the balance of federal and state judicial responsibilities would be disrupted. *See id*. ("*Merrill Dow* should be read in its entirety as treating the absence of a federal private right of action as evidence relevant to, but not dispositive of, the 'sensitive judgments about congressional intent' that § 1331 requires.").

The plaintiffs argue that, like *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804 (1986), this court should find that the federal issues do not warrant federal jurisdiction. In *Merrell Dow*, the plaintiffs brought an action against a drug manufacturer in state court alleging that the ingestion of a certain drug resulted in birth defects. *Id*. at 805–06. The plaintiffs sought damages on common-law theories of negligence, breach of warranty, strict liability, fraud, and gross negligence, and also alleged that the defendant's alleged misbranding of the drug violated the Federal Food, Drug, and Cosmetic Act, which created a "rebuttable presumption" of negligence and the "proximate cause" of the plaintiffs' injuries. *Id*. The defendant removed the case based on federal question jurisdiction. *Id*.

The Court held that federal jurisdiction did not exist. *Id*. at 817. The Court noted the lack of a federal private right of action and stated that "it would flout . . . congressional intent" to provide a federal private right of action for a violation of a federal statute where no federal private right of action is included in the statute. *Id*. at 812. Additionally, the Court stated that "the presence of the federal issue as an element of the state tort" would not qualify as the type of adjudication that would "serve

10

congressional purposes and the federal system." *Id*. at 814.

In *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), the court expounded on the implications of a lack of a private right of action in deciding whether federal question jurisdiction exists. The plaintiff in *Grable* brought a quiet title action in state court against a tax sale purchaser, alleging that the Internal Revenue Service had given the plaintiff inadequate notice of the sale. *Id*. at 310. The defendant removed the case to federal court, and the district court declined to remand the case because it posed a significant question of federal law. *Id*. The Court affirmed the lower court's decision not to remand and distinguished *Grable* from *Merrell Dow* stating the following:

> Although Congress also indicated ambivalence in this case by providing no private right of action to Grable, it is the rare state quiet title action that involves contested issues of federal law . . . . Consequently, jurisdiction over actions like Grable's would not materially affect, or threaten to affect, the normal currents of litigation. Given the absence of threatening structural consequences and the clear interest the Government, its buyers, and its delinquents have in the availability of a federal forum, there is no good reason to shirk from federal jurisdiction over the dispositive and contested federal issue at the heart of the state-law title claim.

*Id*. at 319–20.

The Court also evaluated whether removal of a state-law claim with a federal issue would disrupt the balance of federal and state judicial responsibilities. The Court noted that "it will be the rare state title case that raises a contested matter of federal law," which demonstrated that "federal jurisdiction to resolve genuine disagreement over federal tax title provisions will portend only a microscopic effect on the federal-state division of labor." *Id*. at 315.

Like *Grable*, no private federal right of action exists in this case. Also like *Grable*, allowing federal question jurisdiction with respect to the plaintiffs' claims in this case will not have "a potentially

11

enormous shift of traditionally state cases into federal court." *Id*. at 319. The limited effect of this case is the result of the limited scope of the ERRP. Under Section 18002, the Secretary has been appropriated $5 billion to carry out the program, which expires on January 1, 2014. Assuming that the deadline remains and no further appropriations are made, the program will have only a short duration and a limited reach. Thus, "there is no good reason to shirk from federal jurisdiction over the dispositive and contested federal issue at the heart of the state law . . . claim." *Id*. at 319–20.

Based on the discussion above, I find that federal jurisdiction over this case will not disturb the balance of federal and state judicial responsibilities.

## III.  CONCLUSION

In essence, the plaintiffs allege that the defendants violated a federal statute that disperses federal funds and is implemented and overseen by federal entities. In doing so, the defendants violated state law by committing conversion and civil theft, were unjustly enriched, and breached a fiduciary duty to the plaintiffs. The thread holding these claims together is the alleged violation of Section 18002. Without it, none of the plaintiffs' claims can stand. I therefore find that federal question jurisdiction exists and will deny the plaintiffs' motion for remand.[2]

Although the court typically sets forth a date and time to conduct a scheduling conference with the parties after determining that jurisdiction exists, I will not do so at this time. Instead, the court will turn its attention to the defendants' pending motion to dismiss and set a date and time for a scheduling conference after deciding the motion, if such a conference is necessary.

**NOW THEREFORE IT IS ORDERED** that the plaintiffs' motion to remand be and hereby is

---

[2]  The plaintiffs also argue that any federal issues raised by the defendants merely provide defenses to the plaintiffs' state-law claims. Based on the analysis above, the court finds that federal law supplies more than a defense. Thus, the court rejects this argument.

**DENIED**.

      **SO ORDERED** this 24th day of April 2012, at Milwaukee, Wisconsin.

                                                **BY THE COURT:**

                                              s/ William E. Callahan, Jr.
                                              WILLIAM E. CALLAHAN, JR.
                                              United States Magistrate Judge