UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| HARTLAND LAKESIDE JOINT NO. 3 SCHOOL DISTRICT, et al., on their own behalf and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> WEA INSURANCE CORPORATION, et al., <br><br> Defendants. | Case No. 12-cv-00154-WEC |

**Plaintiff Class Representatives' Memorandum in Support of Their
Motion to Compel Further Discovery Relating to Testimony and Opinions of Vaughn
Vance**

# INTRODUCTION

Pursuant to Fed. R. Civ. P. 37(a), the Court should order Defendants (collectively "WEA Trust") to make further discovery, including producing about 500 documents, related to the testimony, opinions, and analysis of Vaughn Vance, one of WEA Trust's in-house lawyers. WEA Trust has, on the one hand, claimed privilege over these documents and over some aspects of Mr. Vance's legal opinions. On the other hand, WEA Trust has tried to use Mr. Vance's legal opinions to support its defenses, filing multiple declarations from him based on his legal opinions, naming him as an expert witness to opine on legal issues, and allowing him to answer deposition questions concerning his legal analysis. By its conduct, WEA Trust has knowingly waived any claim of privilege.

WEA Trust's waiver is clearest in connection with its naming Mr. Vance as an expert witness. On March 15, 2013, WEA Trust identified Mr. Vance as an expert to give

opinions on multiple legal issues relating to the Early Retiree Reinsurance Program ("ERRP") and various legal aspects of WEA Trust's defenses.  Even after receiving a warning from class counsel that naming Mr. Vance on these topics would result in a waiver, WEA Trust insisted on its right to have him testify and allowed him to be deposed for nearly four hours, during which he explained his legal opinions in detail.  Mr. Vance also testified that his opinions were based on: (1) the advice he gave to WEA Trust regarding ERRP (Ludwig Decl. Ex. 1, Vance Dep. II, at 16:18-22, 13:9-14, 18:1-3); (2) his "interactions and communications with other WEA Trust employees" related to that advice (*Id.* at 17:23-25); and (3) letters from outside counsel, including DeWitt Ross & Stevens, related to WEA Trust's VEBA status (*Id.* at 61:16-62:11).

In addition, WEA Trust has filed a declaration from Mr. Vance in support its pending motion for summary judgment.  That declaration rests on the same legal analysis and opinions over which WEA Trust simultaneously is trying to maintain claims of privilege.  *E.g.*, (Dkt. 78, at ¶ 2 (concerning WEA Trust's tax exempt status as a "VEBA"); ¶ 5 (concerning whether WEAC is an "employee organization"); ¶ 8 (concerning WEA Trust's "maintaining" a health insurance "plan"); ¶ 17 (concerning other union-affiliated VEBAs); ¶ 28 (concerning WEA Trust's compliance with ERRP cost reduction requirement); ¶ 29 (concerning WEA Trust's compliance with ERRP maintenance of effort requirement); ¶ 30 (concerning WEA Trust's compliance with both VEBA and ERRP requirements); ¶ 31 (concerning WEA Trust's alleged good faith in complying with ERRP)).

After Mr. Vance's expert deposition, plaintiffs requested the production of all documents related to the legal conclusions and opinions on which WEA Trust had allowed him to testify—such documents having already been requested in plaintiffs' discovery requests last August.  (Ludwig Decl. Ex. 6.)  Perhaps finally recognizing the full implications of its strategy,

2

4841-0106-7028.3

Case 2:12-cv-00154-WEC   Filed 05/24/13   Page 2 of 13   Document 85

WEA Trust responded by purporting to withdraw Mr. Vance as an expert, but refused to produce the documents that formed the bases for Mr. Vance's testimony. (Ludwig Decl. Ex. 7.)

WEA Trust cannot use Mr. Vance's testimony affirmatively, selectively allowing him to testify about his legal conclusions, and at the same time shield documents that he admits form the bases for those conclusions. Moreover, having allowed him to testify to his legal conclusions and analysis, WEA Trust has waived any claim of privilege. The plaintiffs are thus entitled to immediate production of the documents that relate to Mr. Vance's testimony about ERRP as well as any further discovery that becomes necessary as a result of that production.

## Background

This case involves a dispute over several million dollars in retiree health claim reimbursements obtained by WEA Trust from the federal government under ERRP, 42 U.S.C. § 18002, part of the Affordable Care Act. The reimbursements relate to specific large health insurance claims of retirees from the class member school districts; each district formerly purchased group health insurance from WEA Trust. 42 U.S.C. § 18002(c). In obtaining the reimbursements, WEA Trust represented to the Department of Health and Human Services ("HHS") that WEA Trust was the "plan sponsor" of the "employment-based" health benefit plans that the plaintiff school districts provide for their employees and retirees. (Dkt. 78-1.)

WEA Trust had already obtained the reimbursements when Wisconsin's collective bargaining law changed, allowing school districts greater ability to contract with insurance companies other than WEA Trust. 2011 Wis. Act. 10. WEA Trust then refused to release any reimbursement to school districts that exercised their new ability to change carriers. (Am. Compl., ¶ 49, Dkt. 23). The class members maintain that WEA Trust's conduct gives rise to liability and damages under Wisconsin law. (Am. Compl., ¶¶ 64-93, Dkt. 23.)

3

Under the ERRP regulations, the reimbursements were to be paid based on the ERISA definitions of "plan sponsor" and "employee welfare benefit plan." The Federal Register provides that ERRP "require[s] reimbursement under the program to a 'sponsor,' and defines sponsor as . . . a plan sponsor as defined in section 3(16)(B) of ERISA, 29 U.S.C. 1002(16)(B) . . . ." 75 Fed. Reg. 24450, 24451 (May 2010). "[W]e define 'employment-based plan' as meaning a 'group health plan' as defined in the RDS regulations at 42 CFR 423.882 . . . . [which] largely tracks the ERISA definition." *Id.*

Long before WEA Trust applied for the ERRP reimbursements, the United States Court of Appeals for the Eighth Circuit had held that WEA Trust "is not an employee welfare benefit plan under section 3(1) of ERISA." *Wis. Edu. Ass'n Ins. Trust v. Iowa State Bd. of Pub. Instr.*, 804 F.2d 1059, 1065 (8th Cir. 1986). The Department of Labor came to this same conclusion in 1985 and reaffirmed it in 1995. ERISA Ops. 85-02A, 85-03A, 1985 ERISA LEXIS 42, 1985 ERISA LEXIS 43, (Ludwig Decl. Ex. 10.) Yet, in applying for the ERRP reimbursements, WEA Trust did not disclose these facts to HHS and maintained in the application that it was an ERISA plan with respect to the insurance it has sold to school districts. (Ludwig Decl. Ex. 1, Vance Dep. II, at 41:22-42:1, 57:7-11, 60:6-12.)

It is unclear whether WEA Trust's non-disclosures were intentional or merely negligent. Discovery has confirmed that WEA Trust did not seek outside legal assistance before it made the representations to HHS on the ERRP application. (Ludwig Decl. Ex. 2, Vance Dep. I, at 81:20-23.) Instead, WEA Trust relied upon the legal analysis made by Mr. Vance, a WEA Trust employee who was then splitting his time between lobbying and the legal department. (Ludwig Decl. Ex. 1, Vance Dep. II, at 5:11-7:9.) Mr. Vance had no experience with ERISA and had never practiced employee benefits law. (Ludwig Decl. Ex. 1, Vance Dep. II, at 7:10-9:12.)

4

Yet, he was the person responsible for concluding that WEA Trust was the appropriate entity to apply for and obtain the districts' ERRP reimbursements and for advising WEA Trust that it could withhold the ERRP funds from districts that chose not to renew with WEA Trust. (Ludwig Decl. Ex. 2, Vance Dep. I, at 81:14-19.)

Apart from Mr. Vance's factual involvement in the application process, Defendants have attempted to introduce into this action his legal conclusions applying the ERRP statute and regulations to WEA Trust. While legal conclusions are not properly the subject of expert testimony, defendants have introduced three declarations from Mr. Vance containing legal conclusions, including (1) interpretations of the ERRP statutes and regulations; and (2) interpretations of VEBA regulations under the Internal Revenue Code. (*E.g.*, Dkt. 78, ¶¶ 2, 28-31, 34; Dkt. 12-2, ¶¶ 3, 9; Dkt. 39, ¶ 15.)

On March 15, 2013, defendants named Mr. Vance as an expert witness who would testify concerning legal matters.[1] (Ludwig Decl. Ex. 3.) On March 27, following plaintiffs' request that defendants comply with the disclosure requirements of Fed. R. Civ. P. 26(a)(2)(C), defendants provided a summary of the opinions that Mr. Vance would give. These opinions included the legal conclusions: (1) "that the WEA Trust is an employee organization" "as that term is used in statutory law and regulations pertaining to [ERRP]," (2) that WEA Trust complied with each of the ERRP program requirements listed in expert opinion topics (iv), (v), (vi), (vii); and (3) that WEA Trust is a VEBA and that such status provided legal restrictions regarding what WEA Trust could do with ERRP reimbursements as a shield against plaintiffs' claims. (Ludwig Decl. Ex. 4.)

---

[1] While testimony as a legal expert on domestic law is itself problematic, *United States v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008) ("The only legal expert in a federal courtroom is the judge."), WEA Trust has waived privilege regardless of whether Mr. Vance is later permitted to testify as an expert.

In response, on March 28, 2013, plaintiffs' counsel sent an email to defendants' counsel questioning whether Mr. Vance's opinions on legal matters were proper expert testimony.  Plaintiffs' counsel also put WEA Trust on notice of the likely waiver of privilege if it insisted on naming Mr. Vance as an expert.  The email cautioned: "proffering of Mr. Vance [as an expert] also opens a host of privilege issues and the waiver of privilege with respect to any communications he has had that relate to the topics on which he is opining." (Ludwig Decl. Ex. 5.)

Despite that warning, WEA Trust elected to adhere to its designation of Mr. Vance as an expert and produce him for deposition.  He testified for several hours concerning his legal opinions, including the analysis he engaged in to determine that WEA Trust could apply for ERRP.  *E.g.*, Vance Dep. II, at 39:4-13 (that he relied on WEA Trust's being a VEBA); 41:6-12 (that he did not consider that WEA Trust was not an employee welfare benefit plan); 59:25-60:5 (same); 45:1-9 (that he believed that WEA Trust met ERISA's definition of plan sponsor); 70:22-71:25 (that Mr. Vance came to the conclusion that WEA Trust was an employee organization).  Mr. Vance freely admitted that his opinions were based on the legal analysis he had provided to WEA Trust.  (*E.g.*, Ludwig Decl. Ex. 1, Vance Dep. II, at 45:13-46:3, 72:21-73:3.)

Moreover, in explaining his opinions, Mr. Vance testified that his conclusions were based on: (1) the advice he gave to WEA Trust regarding ERRP (Ludwig Decl. Ex. 1, Vance Dep. II, at 16:18-22, 13:9-14, 18:1-3); (2) his "interactions and communications with other WEA Trust employees" related to that advice (*Id.* at 17:23-25); and (3) on letters from outside counsel, including DeWitt Ross & Stevens, related to WEA Trust's VEBA status (*Id.* at 61:16-62:11).  Only twice in the entire deposition did WEA Trust object to questions on

6

4841-0106-7028.3

Case 2:12-cv-00154-WEC   Filed 05/24/13   Page 6 of 13   Document 85

privilege grounds and instruct Mr. Vance not to answer. (Ludwig Decl. Ex. 1, Vance Dep. II, at 10:24-11:3, 62:3-9.) On other occasions, WEA Trust objected that a question called for WEA Trust's legal strategy, but then allowed Mr. Vance to answer. (Ludwig Decl. Ex. 1, Vance Dep. II, at 81:13-17, 82:9, 91:11-14, 92:4-6.)

WEA Trust had previously asserted privilege over, and withheld from its document production, about 500 documents that it claimed related to Mr. Vance's legal advice concerning ERRP and to communications involving WEA Trust employees related to Mr. Vance's legal advice.[2] By offering Mr. Vance's opinions based on these topics, WEA Trust has waived any privilege as to both of these sets of documents.

WEA Trust also knowingly introduced Mr. Vance's analysis and legal advice into its defense of the plaintiffs' claims regarding the ERRP reimbursements very early in the litigation. (Dkt. 12-2, ¶¶ 3, 9; Dkt. 39, ¶¶ 4, 15.) And it has recently filed a summary judgment motion based on the same legal analysis by Mr. Vance and supported by his declaration from him on the same topics. (*E.g.*, Dkt. 79, Brief at 20; Dkt. 78 at ¶¶ 28-31.)

After plaintiffs' counsel demanded on May 15, 2013 that WEA Trust immediately produce the documents that it had previously withheld, counsel for WEA Trust responded by purporting to withdraw Mr. Vance as an expert witness and re-designate him as a fact witness. (Ludwig Decl. Exs. 6 and 7.) Plaintiffs' counsel wrote to defendants' counsel on May 20 informing them that the re-designation was too late because the waiver had already occurred. (Ludwig Decl. Ex. 8.) WEA Trust responded on May 22 that it continued to take the position that it would not produce documents. (Ludwig Decl. Ex. 9.) Counsel conferred by phone on

---

[2] Additionally, WEA Trust presumably has had communications with DeWitt Ross & Stevens concerning ERRP, which it has withheld, but which are not listed on its privilege log.

7
4841-0106-7028.3

Case 2:12-cv-00154-WEC   Filed 05/24/13   Page 7 of 13   Document 85

May 23, 2013, agreeing that they had reached impasse, that the Court ought to resolve this dispute, and that they would request an expedited briefing schedule. (Ludwig Decl. ¶ 11.)

## Argument

### I. WEA Trust Waived Any Claim of Privilege When Mr. Vance Testified About Assertedly Privileged Communications.

Mr. Vance testified for hours, disclosing his legal opinions and legal analysis. This disclosure occurred after class counsel warned counsel for WEA Trust that such testimony would constitute a waiver. This disclosure amounts to subject-matter waiver over all communications relating to ERRP or WEA Trust's VEBA status. Recently, a district judge in Chicago held that a party made a subject-matter waiver when its attorney disclosed, in deposition testimony, the contents of one communication between the attorney and the client. *Meds. Co. v. Mylan Inc.*, 2013 U.S. Dist. LEXIS 37329, *16-23, 2013 WL 1283480 (N.D. Ill. Mar. 19, 2013). There, the attorney simply disclosed a conversation that she had with an employee where the employee told her that a testing process, related to a patent, had not been followed and that the results were under investigation. *Id.* The court held that there was a subject matter waiver over all communications on the same topic, ordered all such communications produced, and provided the moving party the opportunity to re-depose a client witness regarding the produced documents. *Id.* at *32-33.

Here, Mr. Vance did more than disclose one conversation. He disclosed the substance of a conversation with the former WEA Trust general counsel (Vance Dep. II, at 39:4-13), and the substance of communications with DeWitt Ross & Stevens (Vance Dep. II, at 61:19-62:11). Mr. Vance testified that his legal opinions were based on his communications with other WEA Trust employees (Vance Dep. II, at 17:23-25). And Mr. Vance disclosed key aspects of his legal analysis relating to ERRP that he had provided to his client over the past three-plus

8

years (*E.g.*, Vance Dep. II, at 39:4-13, 41:6-21, 49:8-19, 59:25-60:1, 84:1-15). Mr. Vance disclosed the substance of his communications with outside counsel even after one of the privilege objections. (Vance Dep. II, at 62:1-11.) This disclosure alone is enough to effect a subject-matter waiver of privilege, in addition to WEA Trust's placing Mr. Vance's advice at issue and naming him as an expert.

## II. WEA Trust Has Waived Privilege Knowingly Introducing Mr. Vance's Legal Opinions Into Its Defenses.

Separately, WEA Trust waived privilege by placing its privileged communications at issue in the case. Under the at issue exception, "the attorney-client privilege is waived when the privilege holder attempts to prove a claim or defense by disclosing or describing an attorney-client communication." *State v. Hydrite Chemical Co.*, 220 Wis. 2d 51, 68, 582 N.W.2d 411 (Ct. App. 1998); Fed. R. Evid. 501.[3] *Hydrite* cited *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851 (3rd Cir. 1994), which described circumstances when a party places its communications in issue or at issue (and thus waives privilege): attorney malpractice actions and patent infringement defenses where a part seeks to limit liability by asserting good-faith reliance on advice of counsel. *Rhone*, 32 F.3d at 863. While it is not enough for waiver that legal advice merely be relevant to a party's state of mind, waiver inevitably occurs when a party takes the affirmative step of attempting to prove a defense or limit its liability by asserting reliance on legal advice. *Id.*

Here, WEA Trust has taken that additional step. After repeated attempts to rely on Mr. Vance's legal opinions and advice in declarations to prove its case, WEA Trust named

---

[3] For purposes of this motion, it is not necessary to decide whether Rule 501 dictates application of Wisconsin law or federal common law here, because there does not appear to be a difference in their treatment of the issue.

9

Mr. Vance as an expert regarding ERRP law as it applies to WEA Trust. After class counsel warned that such a step would create waiver, WEA Trust produced Mr. Vance for a deposition in which he disclosed his legal advice, analysis, and opinions repeatedly. If that were not enough, WEA Trust also filed a motion for summary judgment supported by Mr. Vance's declaration that put WEA Trust's reliance on his advice at issue in the case again. WEA Trust argued in its summary judgment brief that class members would need to prove fraudulent intent to succeed on their civil theft claim, and that:

> The WEA Trust acted in good faith in creating and implementing its plan for use of ERRP funds (PFF 56, 58), and there is no evidence whatsoever to support a finding that the WEA Trust acted with fraudulent intent.

(Dkt. 79, at 20.)

WEA Trust supported this assertion by Mr. Vance's declaration that "the WEA Trust has understood and has believed that [its allocation] decisions comply with . . . all . . . requirements of ERRP." (Dkt. 78, ¶¶ 30, 31.) Permitting WEA Trust to affirmatively assert that it has acted in good faith while also withholding the documents that it relies on to prove that, would be permitting WEA Trust to use privilege as both a sword and a shield—a tactic that has been soundly rejected by this Court. *Kimberly-Clark Corp. v. Tyco Healthcare Retail Group*, 2007 U.S. Dist. LEXIS 5974, *4-5, 2007 WL 218721 (E.D. Wis. Jan. 26, 2007).

WEA Trust has affirmatively placed at issue its own good-faith compliance with Mr. Vance's and DeWitt Ross & Stevens's legal advice to WEA Trust regarding ERRP and is attempting to limits its liability by affirmatively asserting its reliance on advice of counsel. By doing so, WEA Trust has waived privilege. The cat is out of the bag and cannot be put back in at this point. Even under *Hydrite*'s narrow approach, WEA Trust has waived privilege.

10

**III. WEA Trust Cannot Undo Its Waiver By Withdrawing Mr. Vance As An Expert After He Has Already Testified Concern His Legal Opinions In Deposition And By Declaration.**

In addition to placing Mr. Vance's communications with WEA Trust at issue in this case, WEA Trust also named him as an expert witness. A party is entitled to materials considered by a testifying expert in forming his opinions. *Karn v. Ingersoll Rand*, 168 F.R.D. 633, 637 (N.D. Ind. 1996) ("[I]t becomes plainly evident that the text of the new Rule, supported by its accompanying commentary, was designed to mandate full disclosure of those materials reviewed by an expert witness, regardless of whether they constitute opinion work product."). Mr. Vance's communications would not be protected by the work-product protection of Fed. R. Civ. P. 26(b)(4)(C), because he was named as a non-retained expert. Additionally, the new protections cannot "impede discovery about the opinions to be offered by the expert of the development, foundation, or basis of those opinions." Notes to 2010 Amendments.

WEA Trust is trying to undo its waiver by withdrawing Mr. Vance as an expert. WEA Trust claims support for this effort in *Natural Resources Defense Counsel, Inc. v. Rodgers*, No. CIVS881658LKKGGH, 2005 WL 2648027, at *1 (E.D. Cal. Oct. 17, 2005). In that case, a dispute over the return of inadvertently disclosed documents turned into a dispute whether a party had waived privilege as to some documents by naming as an expert a witness who had considered otherwise privileged documents in forming his opinions. *Id.* Recognizing the sensitivity of the documents at issue, the judge specifically offered the party a choice to withdraw one of its non-retained experts in order to preserve the privilege. *Id.* WEA Trust cannot give such a choice to itself now, particularly after it chose to ignore warnings that having Mr. Vance testify as an expert would amount to a waiver. Also, the choice in *NRDC* appears to have been offered shortly after the expert was designated and before discovery was taken from

11

the expert. *Id.* (Sept. 16, 2005 offered chance to de-designate), Dkt. 1195, at 5 (Sept. 9, 2005 Friant depositions not yet scheduled); Dkt. 1172 (Aug. 22, 2005 disclosure of experts).

A recent ABA publication addressed the issue of parties attempting to avoid discovery by re-designating an expert. M. Derek Harris, *Experts Cannot Be Shielded from Discovery by Redesignation*, Vol. 38 No. 3 Litigation News at 19 (Spring 2013). The article discussed an Arizona Court of Appeals decision involving the re-designation of an expert from a testifying expert to a consulting expert after the expert's opinions had been disclosed. The case interpreted an Arizona procedural rule "which is substantially similar to its federal counterpart." *Id.* The court rejected the attempt to re-designate. The same court had previously addressed the impact of re-designating an expert as a fact witness in the context of a legislative privilege. The court stated that "a party who has named a consultant as an expert can reinstate the privilege by removing that designation before expert opinion evidence is offered through production of a report, responses to discovery, or expert testimony." *Minority Coalition v. Ind. Comm'n*, 121 P.3d 843, ¶ 83 (Ariz. Ct. App. 2005). In this case, WEA Trust has already offered a summary of Mr. Vance's opinions, and he has already testified. Therefore, it is far too late in the day for WEA Trust to reinstate the privilege that it waived by describing and disclosing portions of communications. When a party produces its attorney to testify about the attorney's legal analysis and legal advice, that testimony waives of privilege. *See Meds Co. v. Mylan Inc.* 2013 U.S. Dist. LEXIS 37329.

## Conclusion

Because WEA Trust has waived privilege over all of its documents involving Mr. Vance relating to ERRP, plaintiffs request that the Court order WEA Trust immediately to produce all such documents that it has previously withheld and to permit plaintiffs to take further discovery relating to those documents.

12

Dated: May 24, 2013	Respectfully submitted,


    s/Philip C. Babler
Brett H. Ludwig Wisconsin Bar No. 1024271
Thomas L. Shriner, Jr. Wisconsin Bar No. 1015208
Philip C. Babler Wisconsin Bar No. 1070437
Foley & Lardner LLP
777 East Wisconsin Avenue
Milwaukee, Wisconsin 53202-5306
414.271.2400
414.297.4900
pcbabler@foley.com
*Attorneys for Plaintiffs and Plaintiff Class*

4841-0106-7028.3