UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| HARTLAND LAKESIDE JOINT NO. 3 ) | |
| SCHOOL DISTRICT, on its own behalf and ) | |
| on behalf of all others similarly situated, et al., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 12cv154-WEC |
| ) | |
| WEA INSURANCE CORP., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

## PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL

Plaintiffs have moved to compel WEA Trust to provide discovery of materials over which WEA Trust has recently waived any claim of attorney-client privilege.  (Dkt. 84.) WEA Trust waived privilege three separate times in May: (1) when its current general counsel, Vaughn Vance, disclosed the substance of privileged communications in his deposition; (2) when WEA Trust put Mr. Vance's legal advice at issue, as part of its summary judgment motion; and (3) when, having named Mr. Vance as an expert witness in March, he testified in May that he took the privileged communications into consideration in forming his expert opinions.  (Brief, Dkt. 85, at 8, 9, 11.)  Each of these grounds is independently sufficient to establish waiver and require disclosure of the otherwise privileged documents.  Giving only a glancing blow to the primary waiver, resulting from Mr. Vance's deposition disclosures, WEA Trust addresses principally the latter two waivers and, incredibly, claims that plaintiffs brought this motion too late.

This motion was filed on May 24, almost immediately after WEA Trust waived privilege—the "at issue" waiver occurred on May 1 and the other two waivers on May 14. Plaintiffs could hardly have acted more promptly.

## WEA Trust's Waiver in the Context of This Case

Plaintiffs' initial brief devoted two pages to the legal background of this case, in order to explain the significance of WEA Trust's privilege waiver on the key subject matters at issue, namely the analysis of the ERRP statutes and regulations and their incorporation of definitions from ERISA. (Brief, Dkt. 85, at 3-5.) Though WEA Trust suggests that it was "highly inappropriate" to provide this background (WEA Trust Brief, Dkt. 92, at 3 n.2), it then presents its own latest theory of this case, though buried in a footnote (*id.*). Because a privilege waiver extends to the entire subject matter on which the waiver has occurred, one can neither make nor defend against a claim of waiver without discussing those subjects. While reserving their response on the merits to the pending and forthcoming summary judgment motions, plaintiffs here reply to WEA Trust's most significant misstatements on the merits. These misstatements show the scope of the subject matters in dispute and on which WEA Trust has waived privilege.

WEA Trust is wrong in complaining that plaintiffs have changed their theory of liability. (WEA Trust Brief, Dkt. 92, at 3 n.2.) Plaintiffs have consistently argued that the class-member districts were the proper plan sponsors under ERRP. (Am. Compl., Dkt. 23, ¶¶ 22, 24-30, 24-36, 66, 67, 74.) Indeed, the Court has recognized that this is a key determination that it will have to make. (*E.g.*, Dkt. 24, at 6-7; Dkt. 46, at 8.)

Remarkably, WEA Trust asserts that its being a voluntary employees' beneficiary association was sufficient to make it eligible to receive the class member school districts' ERRP reimbursements. (WEA Trust Brief, Dkt. 92, at 3 n.2) ("[T]hus the WEA Trust, as a VEBA, was

2

eligible.").  This superficial misreading of the ERRP statute is the equivalent of plaintiffs'

saying that "as employers" or "as political subdivisions of government," two other categories

listed in ERRP, the class member districts were eligible.  *See* 42 U.S.C. § 18002(a)(2)(B)(i)(I).

The analysis of who is plan sponsor can pass through that spot but cannot end there (even if Mr.

Vance's and WEA Trust's analysis did).

WEA Trust also asserts that, as an employees' beneficiary association, it is an

employee organization.  (WEA Trust Brief, Dkt. 92, at 3 n.2.)  Putting aside for now that this is

inconsistent with its summary judgment assertion that the teacher union WEAC was the relevant

employee organization (Dkt. 78, ¶ 5), so that the theory expressed in its response is new even

since WEA Trust's May 1 summary judgment motion, WEA Trust identified Mr. Vance as an

expert on the topic of "WEA Trust's status as an employee organization," leading to one of the

privilege waivers on which plaintiffs rely.  (Dkt. 86-4, at 2.)  Apparently WEA Trust is under the

mistaken impression that an "employees' beneficiary association" under ERISA is the same

thing as a VEBA under the Internal Revenue Code.  (WEA Trust Brief, Dkt. 92, at 3 n.2; Dkt.

86-4, at 2) (WEA Trust "is an employee's beneficiary organization in that it is a VEBA").

But, definitionally, these terms do not mean the same thing:

> The term voluntary employees' beneficiary association in section
> 501(c)(9) of the Internal Revenue Code is not necessarily
> coextensive with the term employees' beneficiary association as
> used in section 3(4) of the Employee Retirement Income Security
> Act of 1974 (ERISA), 29 U.S.C. 1002(4), and the requirements
> which an organization must meet to be an employees' beneficiary
> association within the meaning of section 3(4) of ERISA are not
> necessarily identical to the requirements that an organization must
> meet in order to be a voluntary employees' beneficiary association
> within the meaning of section 501(c)(9) of the Code.

26 C.F.R. § 1.501(c)(9)-7.

Indeed, the Department of Labor ruled years ago that even though WEA Trust had been recognized by the IRS as a VEBA, it was not an employees beneficiary association — "There is also no employees' beneficiary association." ERISA Op. 85-02A, 1985 ERISA LEXIS 42. That the Eighth Circuit litigation and DOL ERISA opinion letters of the 1980s are unfavorable to WEA Trust does not make them "irrelevant." (WEA Trust Brief, Dkt. 92, at 3 n.2); *see also* 45 C.F.R. § 149.2, incorporating 42 C.F.R. § 423.882, incorporating § 607(1) of ERISA, which provides that "group health plan means an employee welfare benefit plan"; ERISA § 3(1), 29 U.S.C. § 1002(1).[1] This legal context demonstrates that these subject matters are in this case, making WEA Trust's individual acts of privilege waiver directly relevant and within the broader subject matter waiver.

### Argument

This case involves an analysis of the ERRP and ERISA statutes and regulations. As shown above, WEA Trust has an uphill battle (to say the least), given the Eighth Circuit's and DOL's precedential and binding rulings on WEA Trust's ERISA status. To fight that battle, WEA Trust made the strategic decision to try to bolster its case by having its general counsel swear to his legal analysis and conclusions on the ERRP statute and regulations.[2] This strategic

---

[1] Again, much more could be said about WEA Trust's new legal theories. WEA Trust now makes the argument that it meets the definition of a collectively bargained plan. This theory was not part of its pending summary judgment motion because, of course, that motion and brief did not mention ERISA. Also, just a month ago, its legal expert, Mr. Vance, whose analysis allegedly provided the basis for WEA Trust's ERRP application, admitted that he did not "have the legal understanding of these provisions to determine if establish and maintain [pursuant to a collectively bargaining agreement] describes our plan." (Vance Dep. II, at 90:7-9.) WEA Trust also says (WEA Trust Br., Dkt. 92, at 3 n.2) that DHHS confirmed that WEA Trust was eligible to apply for ERRP, even though DHHS made no such confirmation. The merits of these issues and others raised by WEA Trust are reserved for the summary judgment motions.

[2] WEA Trust now asserts that Mr. Vance's testimony is fact testimony rather than legal opinion testimony of an unqualified expert. (WEA Trust Brief, Dkt. 92, at 5.) But when he

4

decision has led to all three of the recent privilege waivers. Because WEA Trust is bound by the consequences of the strategy it embraced, it has only itself to blame for the waivers that have occurred.

## I. Plaintiffs' Motion Is Timely.

All three of WEA Trust's privilege waivers occurred in May 2013.[3] The first chronologically occurred when WEA Trust filed its summary judgment motion on May 1 and put the legal advice it received from Mr. Vance at issue. The other two waivers occurred when Mr. Vance testified at his deposition on May 14, the next to last day of discovery.

WEA Trust's lead challenge to plaintiff's motion to compel is that plaintiffs waited until May 24 to move. WEA Trust can hardly complain about the timeliness of a motion to compel filed after its summary judgment motion (WEA Trust Brief, Dkt. 92, at 7), when that very motion effected one of the waivers on which plaintiffs rely. Nor can WEA Trust plausibly call untimely the portions of the motion to compel based on the other waivers that took place at Mr. Vance's deposition.

---

testified at his expert deposition, Mr. Vance was clearly trying to provide expert testimony on the law. (Vance Dep. II, at 68:7-14, 72:11-73:3, 98:3-12, 104:14-18, 107:19-25, 111:20-25); *United States v. Lupton*, 620 F.3d 790, 798-800 (7th Cir. 2010). Class counsel did not, as WEA Trust suggests (WEA Trust Br., Dkt. 92, at 5), admit that Mr. Vance was providing fact rather than expert testimony. Class counsel had already warned WEA Trust that Mr. Vance's proposed testimony was improper legal opinion testimony. (Dkt. 86-5, at 2.) Class counsel repeated that concern in Mr. Vance's deposition.

[3] Strangely, WEA Trust begins its discussion of timeliness by telling the Court that it asserted privilege in March 2012 with respect to document requests in *another lawsuit in another district*, not involving all of the present plaintiffs (Oconomowoc was not one of the districts sued by its former insurer, WEA Trust) and that there was no objection to its privilege claim, as if there were some significance to the fact. WEA Trust fails to tell the Court that it dismissed that lawsuit less than a month after privilege was asserted, so that discovery got nowhere in that case.

5

WEA Trust first named Mr. Vance as an expert witness on March 15. (Dkt. 86-3.) On March 28, the day immediately after WEA Trust provided the summary of Mr. Vaughn's expected opinions required by Fed. R. Civ. P. 26(a)(2)(C)(ii) (Dkt. 86-4), class counsel warned that "Your proffering of Mr. Vance in this role also opens a host of privilege issues and the waiver of privilege with respect to any communications he has had that relate to the topics on which he is opining." (Dkt. 86-5.) WEA Trust did not then take any actions to withdraw or "de-designate" Mr. Vance. To accommodate schedules, Mr. Vance's expert deposition took place on May 14. (Dkt. 86-1.) At the end of the deposition, class counsel raised the waiver issue immediately. (Vance Dep. II, at 126:15-127:8.) Class counsel sent a letter to WEA Trust's counsel the next day, demanding production of all affected documents. (Dkt. 86-6.) Class counsel could not have complied with Rule 37's meet-and-confer obligations and filed a motion before the close of discovery when the waiver occurred *the day before discovery closed*. The assertion that this motion is untimely is absurd.

Plaintiffs are not challenging WEA Trust's initial claims of privilege over these communications. While Mr. Vance was both Director of Government Relations and Assistant General Counsel when WEA Trust submitted its ERRP application, plaintiffs' do not challenge that he was acting as lawyer in connection with the withheld communications. Accordingly, plaintiffs had no reason to challenge WEA Trust's assertion that these communications were originally privileged and could not have brought a motion, as WEA Trust now suggests they had to do, in September 2012 when WEA Trust first asserted privilege. Nor could plaintiffs have done so on *April 25, 2013* -- when WEA Trust finally provided a privilege log. (*See* WEA Trust Brief, Dkt. 92, at 8; Ranney Decl. Dkt. 93, ¶ 5.)

This motion is also not about whether "new communications" were "implicated." (WEA Trust Brief, Dkt. 92, at 8.) WEA Trust's waiver concerns matters that previously were (to all appearances) privileged. That privilege was waived in May when WEA Trust disclosed the substance of its communications during Mr. Vance's deposition, permitted Mr. Vance to testify as an expert on matters where privileged communications formed his opinions, and put its privileged communications at issue in its summary judgment motion.

None of the cases that WEA Trust cites supports the denial of plaintiffs' motion to compel. In *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 647 (7th Cir. 2001), the district court had, on the last day of discovery, offered the moving party the opportunity to file a prompt motion to compel if the parties could not work out the discovery dispute. *Id.* at 636. The court of appeals affirmed the district court's discretionary decision denying a motion to compel when the party failed to promptly file its motion, but instead waited another month to do so. *Id.* Here, plaintiffs acted the same day that two of the waivers occurred and promptly engaged in efforts to meet and confer with WEA Trust in an effort to resolve this dispute.

## II.     WEA Trust Waived Privilege by Disclosing Privileged Communications.

Mr. Vance disclosed during deposition his analysis of ERRP and the advice he gave to WEA Trust regarding that subject matter. (Vance Dep. II, at 39:4-13, 41:6-12, 41:13-16, 58:19-23, 59:19-60:5, 91:15-19.) He also disclosed the substance of specific communications underlying that advice, including what the former general counsel told him (Vance Dep. II, 39:4-13), what outside legal counsel told him (*id.*, at 61:19-62:11, 87:24-88:4), and a request for advice from the former general counsel relating to WEA Trust's eligibility to participate in the

Retiree Drug Subsidy program[4] (*id.*, at 84:1-8). These disclosures were ample – without anything more – to effect a subject matter waiver of privilege. *Meds. Co. v. Mylan Inc.*, 2013 U.S. Dist. LEXIS 37329, at *16-23, 2013 WL 1283480 (N.D. Ill. Mar. 19, 2013); *see Lorenz v. Valley Forge Ins. Co.*, 815 F. 2d 1095, 1098-99 (7th Cir. 1987) (partial disclosure of privileged communications waives privilege); Fed. R. Evid. 502.

       To confuse its waiver, WEA Trust tries to distinguish between what it claims is non-privileged evidence—"testimony as to the reasoning and manner in which Atty. Vance and the WEA Trust came to a good-faith conclusion that WEA Trust was eligible for ERRP and that the Trust's plan for allocating and using ERRP funds complied with ERRP"—and privileged communications between Mr. Vance and WEA Trust employees and outside counsel. (WEA Trust Brief, Dkt. 92, at 11.) But the distinction makes no sense. Both the legal advice that Mr. Vance gave to WEA Trust and his underlying "reasoning" are privileged. By disclosing that advice and reasoning, WEA Trust has waived any privilege over the subject matter of the advice.

       The waiver could hardly be more clear. Mr. Vance confirmed that his "expert" testimony was based on the substance of the advice that he gave to WEA Trust regarding ERRP. (Vance Dep. II, at 13:9-14; 16:18-22, 18:1-3; 39:4-13, 41:6-12, 41:13-16, 58:19-23, 59:19-60:5, 91:15-19.) WEA Trust came to its conclusions regarding ERRP based on Mr. Vance's analysis advice. (Dkt. 86-2, Vance Dep. I, at 81:14-23; Moody Dep. 65:14-19; McGowan Dep. 47:14-48:6, 35:22-36:16.) By providing "testimony as to the reasoning and manner" in which he and WEA Trust came to the "conclusion that WEA Trust was eligible for ERRP," Mr. Vance

---

[4] The RDS program uses the same definitions for eligibility (plan sponsor) as ERRP—42 C.F.R. § 423.882.

disclosed the substance of privileged communications. This alone is enough to effect a subject matter waiver -- the Court's analysis need go no further.

### III.    WEA Trust Put Its Privileged Communications at Issue.

For privileged communications to be "at issue," so that privilege is waived, they must be put at issue by the party that asserted privilege. WEA Trust has done that by arguing that culpable intent must be shown for plaintiffs to prevail on a civil theft claim. (WEA Trust Brief, Dkt. 92, at 9; Dkt. 79, at 20.) Rather than simply arguing that plaintiffs do not have evidence to establish this element,[5] WEA Trust affirmatively attempts to avoid liability by asking the Court to find that it acted in good faith (Dkt. 79, at 20; Dkt. 80, ¶¶ 56, 58), and by asking the Court to make this finding based on a declaration from Mr. Vance, swearing that "the WEA Trust has understood and has believed that such decisions comply with the Cost Reduction Requirement, the MOE Requirement and all other requirements of ERRP" (Dkt. 78, ¶¶ 30-31). These determinations, if they were made, flowed directly and exclusively from WEA Trust's reliance on Mr. Vance's advice to it (Vance Dep. I, 81:14-23).

When a party "voluntarily injects into the suit the question of [its corporate] state of mind," by alleging that it in good faith believed that its actions complied with governmental regulations, that party waives privilege by putting its own state of mind at issue. *United States v. Exxon Corp.*, 94 F.R.D. 246, 248 (D.D.C. 1981) (so holding and compelling production). The only way for plaintiffs to challenge and for this Court to assess the validity of Mr. Vance's sworn

---

[5] While plaintiffs do not concede that WEA Trust has accurately stated what intent plaintiffs need to prove in order to prevail on their civil theft claim, plaintiffs note that there is such evidence. The statute itself and the case WEA Trust relies on point out that "A refusal to deliver any money . . . upon demand of the person entitled to receive it . . . is prima facie evidence of an intent to convert . . . ." Wis. Stat. § 943.20; *Tri-Tech Corp. of Am. v. Americomp Servs. Inc.*, 2002 WI 88, ¶28, 254 Wis. 2d 418, 646 N.W.2d 822.

assurance that WEA Trust believed in good faith that its actions complied with ERRP regulations is to review the attorney-client communications where WEA Trust interpreted ERRP regulations and expressed its intent to comply with ERRP regulations by relying on the analysis. *Id.* at 249. Some aspects of that analysis have already been disclosed by Mr. Vance in his deposition. Because WEA Trust has affirmatively alleged that its corporate state of mind reflects reliance by WEA Trust on Mr. Vance's analysis, plaintiffs have the right to test whether that is true. *Id.*

This is a classic example of a party trying to use privilege as both a sword and a shield. WEA Trust cannot on the one hand use Mr. Vance's declaration to prove its good faith and on the other assert privilege over the documents relating to that conclusion. *McLaughlin v. Lunde Truck Sales, Inc.*, 714 F. Supp. 916, 919-920 (N.D. Ill. 1989). When a party uses a declaration of counsel as proof of its good-faith attempt to comply with the law, that action implies that its counsel's interpretations of the law were the basis for the corporate party's good-faith belief. *Id.* WEA Trust has offered testimony that WEA Trust's analysis was based on Mr. Vance's analysis of ERRP and has disclosed key aspects of that analysis. It is inequitable for a party to attempt to control which of its attorney's interpretations of the law are discoverable. *Id.* WEA Trust cannot use privilege as both a sword (accepting Mr. Vance's assurance that WEA Trust relied on his legal advice in good faith) and a shield (allowing WEA Trust to keep that advice, key aspects of which has now been disclosed, privileged). *Kimberley-Clark Corp. v. Tyco Healthcare Retail Group*, 2007 U.S. Dist. LEXIS 5974, at *4-5, 2007 WL 217821 (E.D. Wis. Jan. 26, 2007). This unfair attempt to disclose only certain privileged communications is the essence of what subject matter waiver prohibits. Putting on proof this way would prejudice plaintiffs.

WEA Trust described "the process and reasoning by which the WEA Trust concluded in good faith that it was eligible to participate in ERRP" (WEA Trust Brief, Dkt. 92, at 5) or "testimony as to the reasoning and manner in which Atty. Vance and the WEA Trust came to a good-faith conclusion that the WEA Trust was eligible for ERRP and that the Trust's plan for allocating and using ERRP funds complied with ERRP" (WEA Trust Brief, Dkt. 92, at 11). That is, WEA Trust described Mr. Vance's analysis, and advice and its good-faith belief is based on WEA Trust's relying on that advice, *see Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3rd Cir. 1994). This places WEA Trust's communications at issue and entitles plaintiffs to explore whether WEA Trust did rely on that advice: Is the now-disclosed analysis what was provided to WEA Trust when it applied for ERRP; when did Mr. Vance provide WEA Trust this advice; did WEA Trust demonstrate that it relied on that advice and that it ought to believe it reasonable to rely on that advice, etc.? *Id.*; *see also Meds. Co. v. Mylan Inc.*, 2013 U.S. Dist. LEXIS 37329, at *30-31, 2013 WL 1283480 (N.D. Ill. Mar. 19, 2013).

Plaintiffs are now entitled to see Mr. Vance's privileged communications with WEA Trust employees because WEA Trust has described the analysis that it says it undertook regarding ERRP and the advice that Mr. Vance says he gave WEA Trust before it applied to ERRP, and because WEA Trust has expressly placed reliance on this advice at issue by asking the Court to find that it acted in good-faith reliance on that advice.

## IV.    WEA Trust's Expert "De-designation" Is Too Little, Too Late.

As the briefing demonstrates, there is limited authority on de-designating a witness from the status of a testifying expert to that of a fact witness. There is no "clear" answer in the case law to what WEA Trust is now trying to do in its effort to unscramble the eggs. (*Cf.* WEA Trust Brief, Dkt. 92, at 2.)

WEA Trust relies heavily on *National Resources Defense Council, Inc. v. Rodgers*, which it admits is "The only case [it is] aware of that squarely confronts the issue here." (Dkt. 86-9, at 2.) The docket from that case suggests that the de-designation in *Rodgers* took place before the witness testified. WEA Trust argues that this assertion "is unsupported by the record." (WEA Trust Brief, Dkt. 92, at 13.) Plaintiffs base their suggestion on a September 9, 2005 document filed with that court indicating that depositions had not been scheduled yet and the fact that the order offering the party the chance to withdraw the expert issued one week later; this short interval makes plaintiffs' suggestion a fair inference. (Brief, Dkt. 85, at 12.) WEA Trust provides no evidence that the expert had been deposed or supporting a contrary inference, instead citing a page in the *Rodgers* decision that discusses what de-designated witnesses might testify about (which again suggests that the witness had not yet testified). (WEA Trust Brief, Dkt. 92, at 13 (citing *Rodgers*, 2005 WL 2648027, at *2).)

Conceptually, a rule allowing the undoing of waiver after disclosure has occurred would make no sense. Disclosure is key to waiver and that includes each of the waivers here. By disclosing the substance of its analysis and communication, WEA Trust waived privilege. By putting its good-faith attempt to comply with the law at issue in this case and attempting to prove that good faith by disclosing key aspects of its communications and analysis, WEA Trust waived privilege. Also, here, WEA Trust's obligation to disclose the documents considered by its expert witness waives the privilege. Because Mr. Vance has already testified regarding his legal analysis and the bases for it, waiver has already occurred. *See Bowne, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 483 (S.D.N.Y. 1993). Once an expert has testified at a deposition, neither the expert nor the party can reverse waiver. It is the disclosure that has been made and requirements to disclose more that drive decisions holding that privilege is waived when a testifying expert

12

considers otherwise privileged communications in preparing his opinions. *Karn v. Ingersoll Rand*, 168 F.R.D. 633, 638 (N.D. Ind. 1996).

Indeed, there would be no need for a court to offer a party a chance to de-designate a witness to protect privilege if a party could designate and de-designate an expert at-will in order to "un-waive" privilege, as WEA Trust here attempts to do. The Court can no more restore WEA Trust's waived privilege for its withdrawn expert, when that expert has been named, has testified, and has partially disclosed the basis for his opinions, than one can unring the proverbial bell. The court's offer to the party in the *Rodgers* case appears to be the only instance that WEA Trust can find where any court has permitted de-designation (DiTullio Ltr., Dkt. 86-9, at 2.), and, as shown above, that offer likely preceded the witness's testimony. Plaintiffs essentially made the same offer to WEA Trust as the court did in *Rodgers* when they warned WEA Trust that "Your proffering of Mr. Vance in this role also opens a host of privilege issues and the waiver of privilege with respect to any communications he has had that relate to the topics on which he is opining." (Dkt. 86-5.) WEA Trust declined the invitation to withdraw Mr. Vance as a testifying expert then. Now, after its designated expert has testified, and after the very situation that plaintiffs predicted has occurred, it is too late to pretend that no waiver of privilege occurred. There is plainly no unfairness involved in making WEA Trust live with the consequences of such a conscious choice.

WEA Trust presents no authority contrary to the instructive Arizona cases that plaintiffs cited. Rather, WEA Trust suggest that they do not "give[] any good reason for the exception" that privilege cannot be regained through de-designation after a party has testified. (WEA Trust Brief, Dkt. 92, at 14.) Yet, the cases are consistent with the disclosure discussion above. Once an expert has disclosed privileged communications, the waiver is complete.

**V.      WEA Trust's Waiver Extends to the Subject of Mr. Vance's Legal Advice.**

WEA Trust also accuses plaintiffs of making an overbroad request for production of the documents as to which privilege has been waived.  Plaintiffs are indeed seeking almost everything on WEA Trust's privilege log, but that is because each of WEA Trust's three waivers is that broad.  WEA Trust's disclosure waiver covered the subject of WEA Trust's eligibility to apply for and participate in ERRP. (Vance Dep. II, at 39:4-13, 41:6-12, 41:13-16, 58:19-23, 59:19-60:5, 91:15-19.)  WEA Trust's summary judgment motion put at issue WEA Trust's compliance with "all . . . requirements of ERRP."  (Dkt. 78, ¶ 31.)  Finally, Mr. Vance's expert waiver involved all communications he considered in forming his opinions, which include: (1) the advice he gave WEA Trust regarding ERRP (Vance Dep. II, 16:18-22, 13:9-14, 18:1-3); (2) his "interactions and communications with other WEA Trust employees" related to that advice (*Id.* at 17:23-25); and (3) letters from outside counsel, including DeWitt Ross & Stevens, related to WEA Trust's VEBA status (*Id.* at 61:16-62:11).

These waivers are broad.  Plaintiffs came to their 500-document estimate based on WEA Trust's privilege log.  Of course, in the "disclosure" and "at-issue" contexts, waiver is determined by subject matter rather than by the identity of the individual involved in the communications, *Meds. Co. v. Mylan Inc.*, 2013 U.S. Dist. LEXIS 37329, at *23 n.6, 2013 WL 1283480 (N.D. Ill. Mar. 19, 2013), but 500 documents is an estimate based on the privilege log and the fact that Mr. Vance was involved in the communications.  The estimate excludes some documents (litigation holds, as to which production is not sought), but anticipates that additional documents will need to be produced if they contain communications between WEA Trust's counsel in this case and Mr. Vance, even though they may not have been disclosed on the privilege log.  Also, some of the privilege log descriptions (e.g., PRIV00217, PRIV00268,

14

PRIV00455, PRIV02623, Dkt. 93-3, at 10, 11, 15, 89) contain vague references to ERRP or health reform; while this *may* have been a sufficient description in connection with the original assertion of privilege as to the documents, it makes it difficult to pinpoint what documents cover the waived subject matters — although the waivers effected here were likely broad enough to cover all documents on this log and other documents not listed. Thus, WEA Trust's privilege log makes it impossible to come up with an exact number now.

Interestingly, WEA Trust's counsel offer to produce their own communications with Mr. Vance in the event that the Court finds waiver, yet suggest that Mr. Vance's communications with WEA Trust employees are not discoverable. (WEA Trust Brief, Dkt. 92, at 15.) There is no basis in the law of privilege or logic for such a distinction. The latter communications formed the bases for Mr. Vance's testimony, and he disclosed their substance. Thus, the privilege over both internal and external communications has been waived.

As to the additional discovery, plaintiffs seek only limited discovery based on what the documents reveal—likely completing a deposition of Mr. Vance. *See Meds. Co. v. Mylan Inc.*, 2013 U.S. Dist. LEXIS 37329, at *32-33, 2013 WL 1283480 (N.D. Ill. Mar. 19, 2013). Yet, not having seen the documents, plaintiffs cannot specify exactly what additional limited discovery it would need. With the Court's direction on the scope of the waiver, counsel will likely be able to work out any details as to which additional documents must be produced. And class counsel — who have long expressed a desire to get this case resolved — will work diligently to complete discovery as soon as possible.

### Conclusion

Plaintiffs request that the Court grant their motion to compel. Additionally, plaintiffs request an award of attorney fees and costs related to this motion. Fed. R. Civ. P. 37(a)(5)(A).

15

Dated:  June 17, 2013                    Respectfully submitted,


                                         s/Brett H. Ludwig _____
                                         Brett H. Ludwig
                                         Wisconsin Bar No. 1024271
                                         Thomas L. Shriner, Jr.
                                         Wisconsin Bar No. 1015208
                                         Philip C. Babler
                                         Wisconsin Bar No. 1070437
                                         Foley & Lardner LLP
                                         777 East Wisconsin Avenue
                                         Milwaukee, Wisconsin  53202-5306
                                         414.271.2400
                                         414.297.4900
                                         pcbabler@foley.com